## Corrin's Estate.

*George W. Scott,* for accountants.

CRUMRINE, P. J., March 12, 1929.—During his lifetime the decedent was a member of the firm of Corrin & Penrod—the same being composed of James C. Corrin, the decedent, Harry R. Corrin and Charles E. Penrod, Sr. These three men purchased the property in which their business was conducted, taking title in the names of the three as tenants in common. To make up the necessary purchase money, they borrowed from Margaret F. Corrin, wife of James C. and now his widow, the sum of $2800, giving as security therefor a

judgment note dated Jan. 1, 1928, and signed "Corrin & Penrod." This note remains unpaid to the present time.

By the first item of his will the testator directs the payment of all his "just debts and funeral expenses."

Items eighth and ninth of the will are as follows:

"Eighth. I will, give and bequeath unto Harry R. Corrin and Charles E. Penrod, Sr., all my undivided interest in the partnership heretofore existing between said Harry R. Corrin, Charles E. Penrod, Sr., and myself, trading under the name of Corrin and Penrod, in the grocery business at No. 238 West Main Street, Monongahela City, Pennsylvania, and in all the assets of said partnership.

"Ninth. I will, give and devise unto Harry R. Corrin and Charles E. Penrod, Sr., above named, all my undivided interest in the premises situate on the Southern side of West Main Street, Second Ward, Monongahela City, Washington County, Pennsylvania, bounded on the North by West Main Street, on the East by land of B. F. Forsythe and H. L. Mayne, on the South by Chess Street, and on the West by lands owned jointly by Samuel B. Robinson, Paul C. Robinson and Minnie Robinson, and lands of James H. Boyer, on the condition that the said Harry R. Corrin and Charles E. Penrod, Sr., shall pay to my wife, Margaret E. Corrin, the sum of Three Hundred ($300.00) Dollars each year, for and during the term of her natural life. And in the event that the said Harry R. Corrin and Charles E. Penrod, Sr., desire to sell and dispose of said real estate during the lifetime of my said wife, then, in such case, a sufficient part of the purchase money received therefor to be invested in lawful securities to a sufficient amount that the interest, income and profit therefrom shall amount to Three Hundred ($300.00) Dollars per annum, which said interest, income and profit of Three Hundred ($300.00) Dollars to be paid by the said Harry R. Corrin and Charles E. Penrod, Sr., to my said wife during her natural life."

Under this state of facts, the court is asked to say whether the testator's proportionate share of this note is payable out of his estate as a part of his general indebtedness. I think not, for the reason that on its face the note imports a partnership indebtedness.

It was signed "Corrin & Penrod"—nothing more. Clearly, the intention was to bind the partnership as such. True, the money obtained on the note went to the purchase of property taken by the partners as tenants in common, but the destination of the funds obtained does not fix the character of the security given. That speaks for itself, and, *prima facie* at least, fixes the status of the contracting parties.

On his death, the testator bequeaths his interest in the partnership in equal shares to the remaining partners. This interest, defined by the Uniform Partnership Act of March 26, 1915, § 26, P. L. 18, was his "share of the profits and surplus;" that is, the net value of his interest over and above its indebtedness. And when the legatees accepted their legacy they impliedly agreed, as a continuing concern, to assume any burdens that may have attached to the share so received. The creditors of the old concern remain creditors of the new: Uniform Partnership Act of March 26, 1915, § 41 (1), P. L. 18.

This view is also in accord with the testator's probable intention and the equities controlling the situation. The money obtained on the note was used to help pay for the building which housed the partnership business. He gave his interest in the business and the building to his two partners. Naturally, he would expect this bequest and devise to carry its own burden.

Had the partnership given a mortgage to Mrs. Corrin instead of a judgment note, the case would have been squarely controlled by section 18 of the Fiduciaries Act of 1917, and there is no essential difference, at least to the layman.

True, the will contains the usual formal provisions for the payment of testator's debts, but this was not his debt primarily, but an obligation of the partnership, and there is nothing to show that the clause was intended to be in relief of the partners.

It should be stated that the widow is not here claiming payment of her note. Certainly the individual partners are ultimately liable for partnership debts, and if she were seeking to hold this estate for the firm debt, her interests would be protected. But she is willing to look to the partnership for payment of the note, and the question is raised here by the partners, who are also the accountants. We shall, therefore, make no award to the widow on account of this note. It should be paid by the partnership.

A decree of distribution in accordance with the foregoing opinion is filed herewith.

From Harry D. Hamilton, Washington, Pa.